UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ABRAHAM KIM,<br><br>                              Plaintiff,<br><br>          v.<br><br>LOS ANGELES COUNTY<br>SHERIFF'S DEPARTMENT,<br>et al.,<br><br>                              Defendants. | Case No. 2:24-cv-10591-CAS-JC<br><br>ORDER DISMISSING COMPLAINT<br>WITH LEAVE TO AMEND AND<br>DIRECTING PLAINTIFF TO<br>RESPOND TO ORDER |

## I.    SUMMARY

On December 9, 2024, Plaintiff Abraham Kim, who is at liberty, is proceeding *pro se*, and has been granted leave to proceed without prepayment of filing fees ("IFP"), filed a Complaint for Violation of Civil Rights ("Complaint"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), against the Los Angeles County Sheriff's Department ("LASD") and "Jailer Garcia," who is sued solely in his or her official capacity.  (Docket No. 1).   The Complaint asserts that Defendants violated Plaintiff's constitutional rights, as well as state law, by denying adequate care for his back injury, among other alleged mistreatment, when he was a pretrial detainee in LASD custody.  (See Comp. at 3-5, 12-14).  He seeks damages and other relief.  (Comp. at 5).

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II. COMPLAINT

Liberally construed, the Complaint alleges the following:

On or about November 18, 2023, Plaintiff was arrested and put in a holding cell at a police station,[1] where he told the staff he was "injured and need[ed] medical assistance for [his] chronic condition." (Comp. at 5). The injury/ condition at issue apparently was a back injury that Plaintiff sustained either "inside the LA County Jail" or in a "car accident prior to being incarcerated" – it is unclear which. (Comp. at 5). Plaintiff was escorted to the urgent care unit at Men's Central Jail ("MCJ"), "where they inadequately diagnosed [his] condition, dressed [him] in jail attire," and moved him to the Inmate Reception Center ("IRC") at the Twin Towers Correctional Facility. (Comp. at 4, 5). There, Plaintiff "had to go back and forth from laying on the floor to the bench" due to the pain. (Comp. at 5). He requested help, and he asked to sit on a padded chair to alleviate the pain, but he was told to "sit elsewhere." (Comp. at 5).

Every IRC staff member allegedly was acting indifferent to the proper protocol for treating an underlying medical condition. (Comp. at 5). The "prison guard" in the IRC allegedly "ignore[d]" Plaintiff's "repeated requests for medical care and fail[ed] to provide any form of care" for Plaintiff's "severe injuries." (Comp. at 12). The IRC's conditions were assertedly "'barbaric' and unorganized, needing to relocate prisoners back and forth for burritos." (Comp. at 5)..

After "several days," Plaintiff was moved to "the MCJ dorm." (Comp. at 12). On the way there, Plaintiff told "the guard" that he was "in no condition to be held in the dorm, considering past conduct from the jail staff and a previous claim" that Plaintiff had filed, so he "need[ed] to be housed separate from the

---

[1]Plaintiff states that he was put in "a holding cell at TPD." (Comp. at 5).

criminals." (Comp. at 12). Plaintiff also continued to plead for medical attention. (Comp. at 12). "The guards" told Plaintiff he was suicidal, which Plaintiff denied, and they proceeded to place him "in housing at a different location." (Comp. at 12). When Plaintiff arrived, there was no mattress in his cell, but the staff ignored his complaints and "rudely den[ied] necessary bedding and medical care." (Comp. at 12). Plaintiff was left to sleep on the "dirty concrete" floor, which contained "traces of urine and feces," and he was not permitted to shower, though "other inmates next to [him] we[re] getting showers and a bed to sleep on." (Comp. at 12). Plaintiff tried to get the attention of the staff members every time they walked by, and they would occasionally "stop and smile" but ignored his requests. (Comp. at 12). Plaintiff also asked to file a grievance, but he was unable to do so, apparently because pen and paper were not permitted. (See Comp. at 12-13). The staff also did not bring him to court during this period. (See Comp. at 12-13). He allegedly remained in these conditions for "almost 3 weeks." (Comp. at 12).

When Plaintiff was then moved to different housing, he was able to file grievances, as pencils and forms were "readily accessible," but the "prison staff" allegedly threatened him "not only to disregard [his] grievances but to subdue [his] right as a civilian in prison." (Comp. at 13). Allegedly, in an incident apparently related to such threats, a "guard deliberately tried to assault" Plaintiff, and Plaintiff "grabbed a pillow for protection."[2] (Comp. at 13). When Plaintiff was finally brought to the jail's urgent care clinic, he said he wished to speak with his

///

///

---

[2]From Plaintiff's statement about this incident, it is unclear what actually happened. He states: "I grabbed a pillow for protection since my injury won't allow me to run, but the guard deliberately tried to assault me and stepped in but instantly knew the outcome of his actions." (Comp. at 13). As noted below, Plaintiff then goes on to say that he "was finally able to get to the urgent care clinic" (Comp. at 13), but it is unclear whether that visit concerned injuries from the guard's assault (or attempted assault), or was simply to address his ongoing back injury.

"personal injury attorney," but he apparently heard nothing back and was denied any available physical therapy at the jail.[3]  (Comp. at 13).

Plaintiff was not convicted of any crime, and he apparently was eventually released from custody.  (See Comp. at 5, 14).  Plaintiff's back injuries had substantially worsened during his time in LASD custody allegedly due to improper care by the staff, as Plaintiff was unable to receive treatment for his "3 disk herniation and disc tears, being in a car accident prior to being incarcerated." (Comp. at 5).  After his release from custody, Plaintiff required multiple visits to the emergency room and continues to need chiropractic treatment, and surgery has been recommended.  (Comp. at 5).  Plaintiff continues to suffer back pain and to walk with a limp, and he "would fall in 3 seconds after starting to run." (Comp. at 5).

Based on these allegations, Plaintiff asserts that Defendants violated his constitutional Eighth Amendment rights to be free from cruel and unusual punishment and deliberate indifference to his serious medical needs and his Fourteenth Amendment rights to due process, equal protection, and access to courts.[4]  (See Comp. at 3).

_____

[3]Plaintiff's allegation on this point is hard to follow, as it reads:

Once I was finally able to get to the urgent care clinic, I asserted that I wanted to talk to my personal injury attorney but none was heard of the reality of my condition and was denied medical treatment with respect to the physical therapy that the facility provides.

(Comp. at 13).

[4]Plaintiff's claims regarding punitive conditions of confinement and lack of medical care actually arise under and are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, because Plaintiff was a pretrial detainee.  See Castro v. County of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016), cert. denied, 580 U.S. 1099 (2017).  On the other hand, his claims regarding his right to access the courts, or his right to

(continued...)

## III.  PERTINENT LAW

### A.    Screening Requirement

Since Plaintiff is proceeding IFP, the Complaint is subject to *sua sponte* review and must be dismissed if it is:  (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999); see also Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (Section 1915(e)(2) applies to all complaints brought by plaintiffs proceeding IFP).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular

---

[4](...continued)

petition the government for grievances, are addressed under the First Amendment, though the right to access the courts has been found to arise under the Due Process Clause as well.  See, e.g., Blaisdell v. Frappiea, 729 F.3d 1237, 1243 (9th Cir. 2013) ("In the context of prisoners' rights, the Supreme Court chiefly has located the access-to-courts doctrine in the Constitution's Due Process and Equal Protection Clauses.  At other times, the Court has described the doctrine as part of every citizen's First Amendment right to petition the government." (citations omitted)); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (noting that the "constitutional right to court access" is "grounded in the First Amendment right to petition and the Fourteenth Amendment right to due process").

claim being asserted *and* "the grounds upon which [that claim] rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing <u>Twombly</u> 550 U.S. at 555)).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Byrd v. Phoenix Police Dep't</u>, 885 F.3d 639, 642 (9th Cir. 2018) (citations omitted); <u>see also</u> <u>Johnson v. City of Shelby</u>, 574 U.S. 10, 12 (2014) (per curiam) (<u>Twombly</u> and <u>Iqbal</u> instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. <u>Iqbal</u>, 556 U.S. at 678 (citation omitted); <u>see also</u> <u>Keates v. Koile</u>, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (quoting <u>Iqbal</u>, 556 U.S. at 676)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." <u>Iqbal</u>, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. <u>Id.</u> (citation and quotation marks omitted); <u>Jackson v. Barnes</u>, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting <u>Iqbal</u>, 556 U.S. at 678-79)), <u>cert. denied</u>, 574 U.S. 1077 (2015).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." (citation omitted)), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled." (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original)).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d at 1126-30 (citations and internal quotation marks omitted).

### B.    Section 1983 Claims

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676. (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged

7

constitutional deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013). A Section 1983 plaintiff must establish both causation-in-fact and proximate (i.e., legal) causation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

## IV.    DISCUSSION

Plaintiff's Complaint is dismissed with leave to amend for violation of Rule 8 of the Federal Rules of Civil Procedure, among other deficiencies, including those addressed below.

First, the Complaint violates Rule 8 because it fails to provide Defendants with adequate notice of the claims against them.  As explained above, Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "The 'short and plain statement' must provide defendants with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  Dura Pharm., Inc. v. Broudo, 544 U.S.

336, 346 (2005) (citation omitted); <u>see also</u> <u>Skaff v. Meridien N. Am. Beverly</u>
<u>Hills, LLC</u>, 506 F.3d 832, 841 (9th Cir. 2007) (per curiam) ("[T]he purpose of a
complaint under Rule 8 [is] to give the defendant fair notice of the factual basis of
the claim and of the basis for the court's jurisdiction."); <u>Jones v. Cmty.</u>
<u>Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) ("[A] pleading must
give fair notice and state the elements of the claim plainly and succinctly."
(citation and internal punctuation omitted)).  To conform to this rule, a complaint
should "fully set[] forth who is being sued, for what relief, and on what theory,
with enough detail to guide discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177
(9th Cir. 1996).  A complaint violates Rule 8 if a defendant would have difficulty
understanding and responding to it.  <u>See</u> <u>Cafasso</u>, 637 F.3d at 1058-59.

Here, aside from a few general statements of Plaintiff's legal claims on the
form Complaint, Plaintiff's facts are largely set forth in three very lengthy
paragraphs that are replete with rambling, incoherent allegations, making it
difficult to discern what happened or how such facts and assertions relate to any
claims against Defendants.  At one point, for example, Plaintiff refers to staff
giving inmates "contraband" such as "[m]ovies pre downloaded on to a USB,
Netflix accounts, Amazon packages, [and] pen and paper," along with "free
coffee" (Comp. at 13), but Plaintiff gives no indication as to how this harmed
Plaintiff or violated his rights during the period of confinement at issue.

Many of Plaintiff's allegations are simply vague.  Plaintiff states, for
example, that "they inadequately diagnosed [his] condition" in the urgent care unit
at MCJ shortly after his arrest, but he does not explain how the diagnosis was
"inadequate," nor does he indicate what treatment was provided, if any.[5]  (See

_____

[5]A pretrial detainee's claim regarding inadequate medical treatment or conditions of
confinement, which is governed under the Due Process Clause, must allege the following:

(continued...)

9

Comp. at 5). Plaintiff also asserts that the conditions at the IRC were "'barbaric' and unorganized," but he provides no clear facts to show this, aside from a vague remark that staff "need[ed] to relocate prisoners back and forth for burritos," along with allegations about having to sit on a bench rather than a padded chair.[6] (Comp. at 5). Plaintiff states that when he was being moved to "the MCJ dorm," he told "the guard" that he was "in no condition to be held in the dorm, considering past conduct from the jail staff and a previous claim" that Plaintiff had filed (Comp. at 12), but he does not explain what "past conduct" had occurred or why he needed different housing. At another point, Plaintiff asserts that he "was not able to go to court during this time and was not able to appeal" (Comp. at 13), but he does not indicate whether he had any court proceedings scheduled, or what matters he wished to "appeal." He also alleges, near the end of the Complaint, that the following occurred after he was moved to a different facility:

> The prison staff was threatening me at this time, not only to disregard
> my grievances but to subdue my right as a civilian in prison. I
> grabbed a pillow for protection since my injury won't allow me to

///

_____

[5](...continued)
(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018), cert. denied, 586 U.S. 1069 (2019); Sandoval v. Cnty. of San Diego, 985 F.3d 657, 669 (9th Cir.), cert. denied, 142 S. Ct. 711 (2021).

[6]Plaintiff indicates that he was in the IRC for "several days" (FAC at 12), but it is not clear whether he was restricted to a bench for that whole time.

1    run, but the guard deliberately tried to assault me and stepped in but

2    instantly knew the outcome of his actions.

3  (Comp. at 13).  This alleged confrontation with "the guard" appears abruptly in

4  Plaintiff's allegations, with no clear context.  Among other things, Plaintiff fails to

5  indicate how this confrontation occurred and whether the guard actually assaulted

6  Plaintiff, and if not, why the attempt at assault was unsuccessful – *i.e.*, what was

7  the "outcome of his actions"?  It is also unclear how, if at all, this assault, or

8  attempted assault, relates to the alleged threats to disregard Plaintiff's grievances.[7]

9       Some of Plaintiff's allegations appear contradictory.  For example, Plaintiff

10  states, at one point, that his back injuries "were sustained inside the LA County

11  Jail," but also refers to his "chronic condition" and references having been "in a

12  car accident prior to being incarcerated" (see Comp. at 5), making it somewhat

13  unclear whether his back injury occurred while in jail – and, if so, how – or merely

14  persisted and worsened while there.  Other matters are similarly ambiguous.

15  Plaintiff alleges, for instance, that he had no mattress in his cell at MCJ and had to

16  sleep on the floor, but later asserts that the facility's "mattresses should be

17  unclosed free of holes [sic] and . . . replaced upon request," making it unclear

18  whether he had no mattress at all or a mattress in poor condition.  (FAC at 12).

19       Moreover, none of the individuals who were involved with Plaintiff's

20  custody and treatment during the period at issue are ever named or otherwise

21  distinguished from one another.  Instead, Plaintiff's allegations refer only vaguely

22

23       [7]"Prisoners have a First Amendment right to file grievances against prison officials . . . ."
24  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).  Retaliation against a
    prisoner for exercising his First Amendment right to seek redress/access the court is an
25  independent constitutional violation.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  To
    state a First Amendment retaliation claim, an inmate must allege, among other things, that he
26  engaged in constitutionally protected conduct (such as filing grievances), that a prison official
    took "adverse action" against the inmate, and that the inmate's constitutionally protected conduct
27  was the "substantial or motivating factor" behind the prison official's adverse action.  Watison,
28  668 F.3d at 1114-15 (citations and internal quotation marks omitted).

11

1  to the "staff," "guards," or other general designations.  The only name is that of

2  "Jailer Garcia," who is listed as a Defendant (albeit only in his or her official

3  capacity), but Plaintiff never specifies how this Defendant was directly involved in

4  Plaintiff's custody or care, if at all.[8]

5      In sum, Plaintiff's Complaint deprives Defendants of fair notice of the

6  claims in a concise and coherent manner, as required by Rule 8. See Twombly,

7  550 U.S. at 555; McHenry, 84 F.3d at 1178. To remedy this, Plaintiff must, at a

8  minimum, provide clear factual allegations against Defendants, separate each legal

9  predicate into a separate claim, and expressly identify which allegations are at

10 issue in each claim.  See Twombly, 550 U.S. at 555 & n.3.  Each claim should be

11 limited to a concise statement of the facts and legal grounds at issue; legal

12 arguments and analysis should be avoided at this stage, as they only serve to

13 obscure the nature of the claims at issue.

14      In addition, the Complaint fails to state a claim against the LASD and

15 "Jailer Garcia," the latter of whom is sued only in his or her official capacity.  A

16 claim against a defendant in his or her official capacity is equivalent to a claim

17 against the state or local government entity that employs the named individual.

18 Kentucky v. Graham, 473 U.S. 159, 166 (1985); Center for Bio-Ethical Reform,

19 Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008), cert.

20 denied, 555 U.S. 1098 (2009).  A plaintiff pursuing claims against a government

21 entity or a defendant in his or her official capacity must demonstrate that a policy

22 or custom of the governmental entity was the moving force behind the violation.

23 See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in

24 an official-capacity suit is the governmental entity and not the named official, 'the

25

26      [8]Because Jailer Garcia is sued only in his or her official capacity, Garcia's direct

27 involvement is not necessarily required, but, as indicated below, providing allegations of conduct
   by individually identified Defendants (even if identified as Doe 1, Doe 2, etc.) would be required

28 to seek relief regarding individual violations not caused by the County or LASD itself.

1  entity's "policy or custom" must have played a part in the violation of federal
2  law.'" (quoting Graham, 473 U.S. at 166)).  That is, the plaintiff must establish an
3  affirmative causal link between the policy at issue and the alleged constitutional
4  violation.  See City of Canton v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van
5  Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (citing Hafer, 502
6  U.S. at 25), cert. denied, 519 U.S. 1111 (1997).

7  　　　Here, Plaintiff fails to state a claim against LASD, or against Garcia in his
8  or her official capacity, because he does not clearly identify any custom, policy, or
9  practice of the County or LASD that violated his constitutional rights.[9]  See
10 Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir.) (state prison administrators
11 "liable in their official capacities only if policy or custom played a part in the
12 violation of federal law" (citation omitted)), cert. denied, 534 U.S. 1066 (2001).
13 To the contrary, many of Plaintiff's allegations suggest that Plaintiff's conditions
14 resulted from individual conduct or neglect, rather than a broader policy or
15 practice.  For example, Plaintiff alleges that while he was deprived of a mattress or
16 showers at MCJ, "other inmates next to [him] we[re] getting showers and a bed to
17 sleep on."  (Comp. at 12).  In such circumstances, absent facts plausibly
18 demonstrating that a policy or practice caused the alleged violations, Plaintiff
19 would need to sue the individual officers whose actions (or inaction) violated his
20 rights – and as indicated above, he would then need to provide allegations
21 showing how each individual Defendant violated his rights.  See Leer, 844 F.2d at
22 633.
23 ///
24

25 　　　[9]Although a "local government may [also] be liable under [Section] 1983 for an official's
26 conduct where the official had final policymaking authority concerning the action at issue, and
   where the official was the policymaker for the local governing body for the purposes of the
27 particular act," Garmon v. County of Los Angeles, 828 F.3d 837, 846 (9th Cir. 2016), Plaintiff
28 does not plausibly allege that any action against him was directed or carried out by any such
   official.

Accordingly, dismissal with leave to amend is warranted for violation of Rule 8 and other deficiencies, including those addressed above.[10]

## V.    ORDERS[11]

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, plaintiff must do one of the following:

1.    File a First Amended Complaint which cures the pleading defects set forth herein;[12] or

2.    Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

///

---

[10]That only certain deficiencies are addressed above should not be construed as validating the merits of other portions of the Complaint in any respect.

[11]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters.  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  See Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[12]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion.  Any First Amended Complaint must:  (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – i.e., it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what each defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption (Fed. R. Civ. P. 10(a)); and (h) not add defendants or claims that are not reasonably related to the claims asserted in the original Complaint.

3.      File a Notice of Intent to Stand on Complaint, indicating Plaintiff's intent to stand on the original Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that Plaintiff's failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7, 2025

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

Attachments